UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG M. PLUMLEY, individually and on behalf of all others similarly situated, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SEMPRA ENERGY, et al.,<br><br>Defendants. | Case No.: 3:16-cv-00512-BEN-AGS<br><br>**ORDER:**<br><br>**GRANTING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

Before the Court is the Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC") filed by Defendants Sempra Energy, Southern California Gas Company, Debra L. Reed, and Dennis V. Arriola. (Docket No. 62.) The motion is fully briefed. For the reasons that follow, Defendants' motion to dismiss is **GRANTED**.

## BACKGROUND[1]

Defendant Sempra Energy ("Sempra") is a publicly traded energy-services holding company whose operating units invest in, develop, and operate energy infrastructure, and

---

[1] The following overview of the facts is drawn from the allegations the SAC. The Court is not making findings of fact. Additionally, unless otherwise indicated, all emphasis added in the SAC has been removed for ease of reading.

1

provide gas and electricity services to customers in North and South America. Defendant Southern California Gas Company ("SCG") is one of Sempra's operating units. During all time periods relevant to this lawsuit, Defendant Debra L. Reed ("Reed") served as Sempra's Chairwoman and Chief Executive Officer ("CEO"), and Defendant Dennis V. Arriola ("Arriola") served as SCG's Chairman, President, and CEO.

SCG is the nation's largest natural gas distribution utility and operates over 20,000 square miles throughout Central and Southern California. SCG's operations includes the storage of natural gas. It owns four natural gas storage facilities, the largest located at the Aliso Canyon facility ("Aliso Canyon"). During the putative Class Period, Aliso Canyon contained approximately 115 underground wells.

This putative securities class action arises out of an October 23, 2015 natural gas leak from a well identified as "SS-25" at Aliso Canyon ("the Aliso Canyon gas leak"). The leak was sealed on February 18, 2016. The crux of Plaintiffs' Complaint for securities fraud is that Sempra made false and/or materially misleading statements in its 2010 and 2014 rate increase applications to the California Public Utilities Commission ("CPUC") and in various public statements prior to and following the Aliso Canyon gas leak regarding Sempra's commitment to safety, the scope of the Aliso Canyon gas leak, and the risks the Aliso Canyon gas leak posed, primarily because none of these statements disclosed that SS-25 lacked a safety valve and/or sliding sleeve valve.

## LEGAL STANDARD

The SAC claims violations of Section 10(b) and 20(a) of the Exchange Act of 1934 and Securities and Exchange Commission ("SEC") Rule 10b-5. To state a securities fraud claim, a plaintiff must plead: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase and sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Webb v. Solarcity Corp.*, No. 16-16440, 2018 WL 1189422, at *4 (9th Cir. Mar. 8, 2018) (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011)).

All factual allegations are accepted as true and "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).[2]

## DISCUSSION

The Court previously dismissed Plaintiffs' First Amended Complaint for failing to adequately plead the existence of materially false or misleading statements or scienter. (Docket No. 56.) Defendants move for a second time to dismiss the SAC on the same grounds, arguing Plaintiffs failed to cure the pleading deficiencies for both elements. The Court agrees that Plaintiffs have again failed to plausibly allege scienter.[3]

Securities fraud claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). Under Rule 9(b), plaintiffs must "state with particularity the circumstances constituting fraud." *Id.*

The Ninth Circuit recently reiterated that the standard for pleading scienter "requires that a complaint 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Webb*, 2018 WL 1189422, at *4 (quoting 15 U.S.C. § 78u-4(b)(2)(A)). "A 'strong inference' that a defendant acted

---

[2] The Court grants Defendants' Request for Judicial Notice ("RJN") as to all documents relied on or referred to in the SAC, and other publicly available financial documents, including Sempra's and Reed's SEC filings. *See Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006) (SEC filings subject to judicial notice).

[3] Because the Court concludes Plaintiffs have not met their burden to allege scienter, it need not determine the sufficiency of their allegations that Defendants made materially false and misleading statements. Nevertheless, without deciding this issue, the Court's review of the SAC indicates that at least some of the newly pleaded allegations sufficiently establish this element.

with scienter is not an irrefutable inference, though it 'must be more than merely plausible or reasonable[.]" *Id.* (quoting *Tellabs*, 551 U.S. at 314. "A 'strong inference' cannot be identified 'in a vacuum,' as '[t]he inquiry is inherently comparative[.]'" *Id.* (quoting *Tellabs* at 323) (alterations in original). "Rather, a 'strong inference' is an inference that is 'cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Id.* (quoting *Tellabs*, at 324). Additionally, scienter "is a subjective inquiry. It turns on the defendant's actual state of mind." *Gebhart v. S.E.C.*, 595 F.3d 1034, 1042 (9th Cir. 2010) (internal citation omitted); *see also Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 206 (1976) ("There is no indication that Congress intended anyone to be made liable for such practices unless he acted other than in good faith.").

In this circuit, scienter is a mental state that includes the "intent to deceive, manipulate, or defraud," and deliberate recklessness. *Webb*, 2018 WL 1189422, at *4 (quoting *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th Cir. 2017)). "Deliberate recklessness is an *extreme* departure from the standards of ordinary care[,] which presents a danger of misleading buyers or sellers that is either known to the defendant or is so *obvious* that the actor must have been aware of it." *Id.* (quoting *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.,* 856 F.3d 605, 619 (9th Cir. 2017)) (emphasis in original).

A district court's determination of whether a "strong" inference has been pleaded must consider the following question: "When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Id.* (quoting *Tellabs* at 326). The Ninth Circuit has instructed that a court first "determine[s] whether any of the allegations, standing alone, are sufficient to create a strong inference of scienter." *City of Dearborn Heights*, 856 F.3d at 620 (quoting *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1095 (9th Cir. 2011)). If none of the individual allegations are sufficient, the court then "conducts a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate

recklessness." *Id.* Like the First Amended Complaint, the Court finds the SAC's allegations, whether evaluated individually or holistically, fail to support a strong inference that Defendants acted with scienter.

First, Plaintiffs essentially re-plead the same scienter allegations that Defendant Reed's January 4, 2016 stock sales evidence her scienter because she would not have received as much money for that sale if she had waited until after Governor Jerry Brown declared the Aliso Canyon gas leak to be a state of emergency.[4] (*Compare* Docket No. 22 ¶¶ 160-161 & SAC ¶¶ 137-138.) As they did in the First Amended Complaint, Plaintiffs attempt to imply a strong inference of scienter from the mere fact that Governor Brown's sister, Kathleen Brown, "serves on Sempra's Board and was compensated $235,000 in 2015." (SAC ¶ 138.) Plaintiffs newly allege Ms. Brown does not have a natural gas or utility industry background, that she "serves on Sempra's Board so as to facilitate political connections and access to the Governor," that a Sempra spokesperson "declined to say whether Ms. Brown's role on the Board and on the Board's environmental committee involved her directly in decision-making concerning the Gas Leak or in interacting with the state of California [sic] in managing the [Aliso Canyon] Gas Leak," and that Ms. Brown "properly" gave Defendant Reed "a slight advance-warning" about the declaration of the state of emergency, which Defendant Reed "improperly" used to her benefit in the January 4, 2016 stock sales. (*Id.*)

Plaintiffs' allegations regarding Reed's scienter suffer from the same flaws identified in the Court's *June 20, 2017 Order*, which it finds applicable to its current analysis of Defendants' instant motion to dismiss and incorporates by reference in this Order. (*See* Docket No. 56 at pp. 20-24.) In particular, Plaintiffs' opposition again fails

---

[4] Plaintiffs' SAC concedes "Defendant Arriola was not obligated to report his sales of Sempra stock during the Class Period. As such, his sales, or lack thereof, are facts unknown to Plaintiffs at this time and do not impact the scienter analysis[.]" (SAC ¶ 139.)

5

to rebut Defendants' prima facie evidence of Reed's consistent stock trading history. (*See* Docket No. 62-6, Defs.' RJN Exs. P-S.) More importantly, Plaintiffs' have not plausibly alleged particularized facts to support the inferences they wish the Court to draw, *i.e.*, that Governor Brown told Ms. Brown that he was going to declare a state of emergency, that Ms. Brown advised Reed of the same, that Reed sold her stock based on this information, and that Reed therefore must have known the omission of SS-25's lack of safety valve was false or misleading. Once again, the Court concludes these inferences are neither reasonable nor compelling based on the complete lack of facts, other than Ms. Brown's position on Sempra's board and her alleged lack of natural gas or utility background, to support Plaintiffs' many accusations.

Second, Plaintiffs' re-pleaded allegations that Defendants made false and misleading statements in their 2014 CPUC rate increase application because they failed to disclose that "Well SS-25, like the other wells at Aliso Canyon, were materially deficient and lacked any safety or shutoff valve and lacked any sliding sleeve valve" still fails to plausibly establish a strong inference of Defendants' scienter. (SAC ¶ 135.) Assuming Plaintiffs' allegations that the 2014 application contained false and misleading statements are true, the Court agrees with Defendants that Plaintiffs have not met their pleading burden because they did not identify any specific persons responsible for the application's statements who had knowledge of the falsity and who intended to deceive investors (or was deliberately reckless in deceiving investors). Indeed, Plaintiffs' opposition does not even address this issue, it merely recites its unfounded conclusion that "Sempra's/SCG's securing CPUC rate increases via deficient applications" evidences Defendants' scienter. (Opp'n at p. 24.)

Third, although Plaintiffs acknowledge the Court's *June 20, 2017 Order*, "provided Plaintiffs with a roadmap for further amendment" (Opp'n at p. 1), the SAC's newly pleaded scienter allegations have not cured the First Amended Complaint's two underlying deficiencies: (1) meeting the PSLRA's heightened pleading standards for scienter, and (2) articulating cogent and compelling inferences that any of the Defendants

6

acted with the requisite state of mind.  Plaintiffs' opposition focuses primarily[5] on the SAC's allegations that Defendants Sempra and SCG intentionally covered up the Aliso Canyon gas leak, "underreported the Gas Leak's scope to minimize exposure to fines and penalties," "obstruct[ed] investigations and efforts to gather up and preserve evidence," and "[made] no mention of the Gas Leak or any of the deficiencies in Well SS-25 that would make prompt resolution impossible" in Sempra's November 13, 2015 prospectus.  (Opp'n at pp. 23-24.)

With respect to the alleged cover-up and underreporting of the scope of the Aliso Canyon gas leak, the SAC lacks specific factual allegations to support this inference, namely because it only generally alleges that Sempra and SCG learned of the gas leak as early as October 23, 2015, but failed to follow their legal obligation to immediately report it despite "attempt[ing] the first of its eight failed top-kill[6] attempts on October 24, 2015."  (SAC ¶¶ 66-69.)  They also generally argue that Defendants' financial motive to delay reporting the leak to avoid higher fines and penalties is evidence of Defendants' scienter.  It is undisputed that SCG's late reporting resulted in the SCG's plea of "no contest" to a violation of California Health and Safety Code § 25510(a), payment of fines/costs in excess of $4 million, and SCG's agreement to certain terms regarding their well management and leak detection systems.  (*Id.* 66-78.)  But even if SCG's first top-kill attempt occurred two-days before SCG reported the gas leak, the SAC does not contain specific factual allegations to support a *strong* inference that there was an intentional or deliberately reckless delay in reporting that was intended to mislead the public.

---

[5] The Court's discussion of Plaintiffs' main opposition arguments does not mean the Court has not considered all of the SAC's newly pleaded allegations.  In determining the sufficiency of Plaintiffs' pleading, the Court has thoroughly reviewed and considered all of the allegations in the SAC, even though it may not expressly discuss each newly pleaded allegation.

[6] Plaintiffs do not define "top-kill attempts," but based on the allegations of the SAC, the Court infers that they consist of surface-level measures to stop the leak.

Moreover, while the SAC alleges SCG went door-to-door falsely reassuring residents the gas leak was under control and they were not in imminent danger (*i.e.*, allegedly underreporting the scope of the gas leak), there are no particularized facts to indicate any specific persons knew the statements were false or intended to mislead investors or the public at the time they were made.[7] Instead, Plaintiffs effectively assert their own general conclusions that all Defendants knew the effects of the Aliso Canyon gas leak were worse than Sempra or SCG reported, and nevertheless failed to report accurate information. Simply put, a three-day delay in reporting the Aliso Canyon gas leak, coupled with financial motive, is not sufficient to meet Plaintiffs' burden to plead a strong inference of scienter.[8] *See City of Dearborn Heights*, 2017 WL 1753276, at *10 (factual allegations that merely show "a motive to commit fraud and an opportunity to do so provide some reasonable inference of intent, but are not sufficient to establish a strong inference of deliberate recklessness").

Similarly, Plaintiffs' allegations that Defendants obstructed investigations and efforts to gather and preserve evidence lack the requisite pleading specificity. The SAC alleges, in a conclusory fashion, that "Sempra's and [SCG's] delay in initially reporting the Gas Leak to authorities . . . delayed action by the District Attorney's environmental

---

[7] Notably, the SAC references the Los Angeles Department of Public Health's "complaint line data" to establish that "over 1,800 health complaints" were received that were allegedly as a result of the Aliso Canyon gas leak. (SAC ¶¶ 71-72.) However, the data provided indicates the data collected includes complaints lodged from September 23, 2015 (*i.e.* one month before the Aliso Canyon gas leak). (*Id.* at p. 32, "Figure 5.") As a result, the Court is left to speculate how many complaints were actually attributable to the Aliso Canyon gas leak, as well as how this information (presumably compiled by the Los Angeles Department of Public Health over a period of time prior to and after the gas leak commenced), was available to Defendants at the time the allegedly false statements were made. This is insufficient to establish a strong inference of scienter.

[8] Inasmuch as Plaintiffs allege post-report statements also underreported the scope of the gas leak, the Court finds the SAC similarly lacks particularized facts establishing any specific person's knowledge or intent to deceive.

crimes rollout team by several days, during which evidence and witness accounts were not preserved." (SAC ¶ 148.) There are simply no specific facts alleged to indicate either who knew and intended to delay the District Attorney's investigation, or who knew and intended to prevent evidence from being preserved.

Plaintiffs' conclusory allegation that Defendant Arriola "refused to guarantee that pertinent evidence related to the Gas Leak would not be destroyed" because he stated SCG was "working with DOGGR[9] to ensure that evidence doesn't get destroyed but there are so many people out there and the urgency to close the well may affect" SCG's ability to preserve evidence fares no better. (SAC ¶ 149.) The Court disagrees that a strong inference of scienter may be drawn from Arriola's statement. On the contrary, the Court finds a more reasonable inference may be drawn that Arriola intended his qualified statement to explain that evidentiary preservation may be affected by the urgency to stop the gas leak. Plaintiffs have failed to allege specific facts to establish a more compelling intent to deceive.

As to Plaintiffs' argument that a strong inference of scienter is substantiated by Sempra's November 13, 2015 prospectus because it "makes no mention of the Gas Leak or of the deficiencies that would render impossible any prompt remedy," the Court is not persuaded. Plaintiffs have not alleged any specific facts to establish any Defendant's intent to deceive or mislead the public in not mentioning the gas leak, which was public knowledge for at least two and a half weeks at the time the prospectus was filed. Along the same lines, Plaintiffs' contention that Defendants knew it was impossible to provide a prompt remedy is not supported by factual allegations and amounts to no more than Plaintiffs' own subjective conclusion, which the Court need not assume true.

Finally, Defendants' motion to dismiss argues the SAC's attempts to invoke the "core operations" doctrine is insufficient because it lacks specific facts to indicate it

---

[9] According to the SAC, "DOGGR" is an acronym for the California Department of Conservation's Division of Oil, Gas and Geothermal Resources. (SAC ¶ 39.)

would be "absurd" to suggest key officers lacked knowledge of SS-25's lack of safety valve/sliding sleeve valve. (Mot. at pp. 20-22.) Under the "core operations" doctrine, a plaintiff in certain circumstances may satisfy the PSLRA's pleading requirements by alleging "a scienter theory that infers that facts critical to a business's 'core operations' or an important transaction are known to a company's key officers." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063 (9th Cir. 2014) (quoting *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 783-84 (9th Cir. 2008)). The Ninth Circuit has cautioned that "absent some additional allegation of specific information conveyed to management and related to the fraud' or other allegations supporting scienter, the core operations inference will generally fall short of a strong inference of scienter." *Id.* (internal quotation marks omitted). Only in "some unusual circumstances," such as "where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter" will the core operations inference, without more, raise the strong inference required by the PSLRA. *Id.* at 1064 (citing *S. Ferry LP*, 542 F.3d at 785.

In opposition, Plaintiffs did not respond to Defendants' argument against application of the core operations doctrine. Nevertheless, the Court has reviewed the SAC's core operations allegations and finds Plaintiffs have failed to demonstrate that their case is one of the "unusual circumstances" where application of the doctrine is appropriate because they only generally allege Defendants had access to reports that might have given rise to knowledge of the falsity of the alleged false or misleading statements. *See Webb*, 2018 WL 1189422, at *10 (citing *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014) (holding that proof under the core operations doctrine "is not easy," and requires "either specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations, such as data monitoring, . . . or witness accounts demonstrating that executives had actual involvement in creating false reports")).

///

In sum, reviewing the SAC's scienter allegations individually and holistically, the Court is not convinced that Plaintiffs have met their pleading burden to establish a strong inference of scienter for any Defendant. Similar to the First Amended Complaint, at best, the SAC alleges Sempra and/or SCG knew that SS-25 lacked a safety valve and had a financial motive and opportunity to omit this information from: 1) the 2014 CPUC rate increase application, 2) public statements regarding the scope and health effects of the Aliso Canyon gas leak, 3) public statements regarding estimated time to stop the leak, and 4) the November 13, 2015 prospectus. The Court finds these allegations, without more, are not sufficient to support an inference of scienter, and therefore Plaintiffs have failed to state a claim for violation of Section 10(b). *See City of Dearborn Heights*, 2017 WL 1753276, at *10 (factual allegations that merely show "a motive to commit fraud and an opportunity to do so provide some reasonable inference of intent, but are not sufficient to establish a strong inference of deliberate recklessness").

Having determined Plaintiffs have not met their pleading burden to adequately plead a violation of Section 10(b), the Court also finds Plaintiffs cannot maintain their Section 20(a) claims against Defendants Reed and Arriola. Accordingly, the SAC is **DISMISSED**.

## CONCLUSION

For all of the foregoing reasons, Defendants' motion to dismiss Plaintiffs' Second Amended Complaint is **GRANTED**.

The Court has considered Plaintiffs' request for leave to amend but finds justice does not require granting their request. As discussed above, the Court's *June 20, 2017 Order* detailed several deficiencies in Plaintiffs' First Amended Complaint, which Plaintiffs failed to cure in their Second Amended Complaint. (*See* Docket No. 56.) Other than their speculation that a "root cause analysis" of the Aliso Canyon gas leak "could" lead to new allegations implicating Defendants' liability, Plaintiffs have not asserted the existence of any newly identified facts that would warrant amendment. (*See* Opp'n at p. 25 n.15.) Although Plaintiffs asserted the root cause analysis report was

11

3:16-cv-00512-BEN-AGS

"months from completion" in their opposition, which was filed on September 15, 2017, to date neither party has advised the Court of the report's completion. Moreover, the Court finds Defendants would be prejudiced if Plaintiff was allowed to file a third amended complaint – having now prevailed twice on their motions to dismiss the same claims, and in the absence of grounds to justify amendment of the claims. Fed. R. Civ. P. 15(a)(2). Therefore, Plaintiffs' Second Amended Complaint is **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

Dated: March 26, 2018

Hon. Roger T. Benitez
United States District Judge